**BEXAR COUNTY BAIL BOND BOARD et al., Appellants,**

v.

**S. L. DECKARD, Sr. et al., Appellees.**

**No. 16413.**

Court of Civil Appeals of Texas, San Antonio.

June 11, 1980.

---

Bill M. White, Criminal Dist. Atty., John L. Quinlan, III, Nelson M. Atwell, Douglas V. McNeel, Asst. Criminal Dist. Attys., San Antonio, for appellants.

Fred A. Semaan, Charles D. Butts, San Antonio, for appellees.

## OPINION

CADENA, Chief Justice.

Defendants, Bexar County Bail Bond Board and its chairman, Charles T. Conaway, appeal from an order temporarily enjoining them from enforcing against plaintiffs, S. L. Deckard, Sr., and F. R. Nance, two regulations adopted by the board.

Tex.Rev.Civ.Stat.Ann. art. 2372p–3 (Vernon Supp.1980) was enacted for the purpose of licensing and regulating bail bondsmen. Section 5(a) creates county bail bond boards in certain counties. Under sections 5(g)(1) and 5(g)(2) of the statute, the board is empowered to establish rules to be followed in the county relating to the taking and setting of bail bonds, to conduct hearings and make determinations respecting the issuance of licenses to bondsmen within the provisions of the statute, and to "issue licenses to those applicants who qualify under the terms of" the statute. Section 5(b) makes it the duty of the board "to set rules and regulations relative to the making of bail bonds by bondsmen within the county."

The first rule or regulation adopted by the defendant board which plaintiffs challenge requires that each applicant for a license file with the board a letter of credit in the amount of $100,000.00.

Section 6(a) of the statute requires a person desiring to act as a bondsman to file a sworn application for a license, setting forth, among other things, a list of non-exempt property owned by the applicant and rendered by him for taxation, and a financial statement. Under section 6(d), when the applicant is notified that his application has been tentatively approved by the board, he must deposit with the county treasurer a cashier's check, certificate of deposit, or cash in the amount of $5,000, to be held by the treasurer in a special bail security fund; or execute in trust to the sheriff a deed to nonexempt property of the value, as determined by the sheriff, of not less than $10,000, conditioned that the property may be sold to satisfy any forfeiture that may be made in bonds executed by the applicant. The statute contains no other provisions concerning the giving of security or assurance by the applicant for a license.

The second regulation challenged by plaintiffs provides:

> Any Licensee who has made a cash deposit with the Treasurer of Bexar County and who suffers the entry of a Judgment Nisi against him in an amount larger than the deposit shall automatically have his license suspended pending resolution of the judgment against him.

Bail Bond Board, Bexar County, Regulation 18 (1979).

 Putting to one side the question whether a legislative grant of power to an administrative agency constitutes, under Texas law, an unlawful delegation of legislative power and thus violates the doctrine of separation of powers, the principle is solidly established that the rules promulgated by an administrative agency are valid if they are constitutional, within the granted power, and adopted in accordance with proper procedure. *See Land v. State*, 581 S.W.2d 672, 673 (Tex.Cr.App.1979); 2 Tex. Jur.3d *Administrative Law* § 16 (1979). Another very solid proposition, at least under Texas law, is that rules and regulations adopted by administrative agencies may not impose additional burdens, conditions or restrictions in excess of or inconsistent with statutory provisions. *Johnson v. Firemen's Ins. Co. of Newark, New Jersey*, 398 S.W.2d 318, 320 (Tex.Civ.App.–Eastland 1965, no writ); *Kelly v. Industrial Accident Board*,

358 S.W.2d 874, 876 (Tex.Civ.App.—Austin 1962, writ ref'd).

The rule–making power delegated to the board under the statute is merely the power to make rules relating to the making and setting of bail bonds in the county. There is no language granting power to make rules relating to the qualifications which must be met by applicants for licenses. A reasonable interpretation of the statutory language supports the conclusion that no such power may be implied. There is granted in section 5(g)(2) authority to conduct hearing and "make determinations respecting the issuance of licenses to bondsmen within the provisions of this Act," as well as the power "to issue licenses to those applicants who qualify under the terms of this Act." The grant of the power to conduct hearings and make determinations is a grant of adjudicative power as distinguished from a grant of rule–making or legislative power. The language concerning the issuance of licenses to "applicants who qualify under the terms of this Act" cannot easily be interpreted as a grant of power to impose additional qualifications as a prerequisite to obtaining a license. It designates the persons to whom licenses are to be issued, and the designation is in terms of persons who qualify under the terms of the statute. Similarly, the investigations which the board is authorized to conduct under section 5(g)(4) are for the purpose of determining the qualifications of applicants "to meet the requirements of this Act."

The legislature has carefully set out the requirements which must be met by applicants for bail bond licenses. The regulation concerning the filing of a letter of credit is the imposition of a requirement in addition to those expressed in the statute. The function of the bail bond board is to administer the statute, not to amend it, at least in the absence of statutory language indicating a legislative intent that the board should have the power to add to the qualifications enumerated by the legislature.

The grounds for revocation or suspension of a license are listed in section 9(b) of the statute. The enumeration of the grounds for suspension contains no language similar to that embodied in the second regulation adopted by the board relating to automatic suspension in case of an entry of a judgment nisi in an amount exceeding the amount of cash deposited with the county treasurer. The statute does provide for suspension of the license of any bondsman who fails to pay "within 30 days any final judgment rendered on any forfeited bond . . . ." Defendants admit that a judgment nisi is not a "final judgment" within the meaning of section 9(b)(5) and that the automatic suspension rule adopted by the board is not an interpretation of that provision, but contend that it is a "separate regulation promulgated pursuant to the rule–making power set forth in sections 5(b) and 5(g)(1)" of the statute "for the purpose of insuring the sufficiency of security offered by bondsmen."

The statute, in section 9(b), lists eight grounds for the suspension of the license of a bondsman. The automatic suspension rule adopted by the board attempts to add a ninth ground. This it cannot do.

Defendants rely on section 4 of the statute which authorizes the sheriff to "refuse to accept the bond if, in the exercise of his discretion, he is satisfied that the security is insufficient . . . ." This provision is a grant of discretionary power to the sheriff, the person charged with the duty of accepting or rejecting bonds tendered by licensed bondsmen or others. It is not a grant of power or discretion to the board. The statute does not empower the board to accept or reject any bond tendered. The discretionary power is vested by the statute in the sheriff. The regulation in question withdraws all discretion from the sheriff.

Defendants cannot rely on section 9(b)(1) which authorizes the suspension of a license of one who violates the provisions of the statute. The statute does not provide for suspension because of the rendition of a judgment nisi against a licensee. In order for an agency's regulation to be considered

a part of the regulatory statute the regulation, as already pointed out, must come within the framework of the power delegated.[1]

The granting or refusal of a temporary injunction rests within the discretion of the trial court and its action should be upheld in the absence of a showing of abuse of that discretion. *See Davis v. Huey*, 571 S.W.2d 859, 861–62 (Tex.1978). Under the record before us, a finding of such abuse is precluded.

The judgment of the trial court is affirmed.

---

1. The procedure for suspension of a license, outlined in section 10 of the statute, contemplates the giving of notice, specifying "the charges," to the licensee by registered mail, followed by a hearing at which the licensee may question the witnesses against him and present witnesses on his own behalf. We assume that the "automatic suspension" contemplated by the board's regulation would be subject to compliance with such requirements.