

# Office of the Attorney General
## State of Texas

**DAN MORALES**
ATTORNEY GENERAL

October 19, 1993

Honorable Bruce Isaacks
Criminal District Attorney
Denton County
P.O. Box 2344
Denton, Texas 76202

Opinion No. DM-264

Re: Whether the Denton County Bail Bond Board is authorized to set a limit on the value amount of bonds which a corporate surety may provide, and related questions under article 2372p-3, V.T.C.S. (RQ-191)

Dear Mr. Isaacks:

You have requested an opinion on eight questions that relate to the authority of a county bail-bond board to regulate corporate bail bondsmen and to regulate the security provided by applicants for bondsmen's licenses. We will address these questions in the order that you asked them.

First, you ask the following: "What is the total [value of the bonds a corporate] bondsman may execute?" This question is answered by Attorney General Opinion JM-799 (1987). In that opinion, this office concluded that a county bail-bond board may not limit the total value of the bonds provided by a corporate bondsman. Section 6(g) of article 2372p-3, V.T.C.S., restricts the value of the bail bonds a bondsman may execute to ten times the value of the property held as security or in trust by the county bail-bond board on behalf of the bondsman. However, section 7 of the same article states "Subsection (g) of Section 6 does not apply to a corporate surety." V.T.C.S. art. 2372p-3, § 7(a). Because the statute explicitly makes the only restriction on the value of the bonds a bondsman may issue inapplicable to corporate bondsmen, there is no limit on the value of the bonds a corporate bondsman may issue.

Second, you ask the following question:

Is the irrevocable letter of credit the only security a corporation must provide upon the bail bond board's tentative approval of the application, or must the corporation also do one of the following: (1) deposit a minimum of $50,000 with the board in [the form of] a cashier's check, [certificate of deposit], or cash, or (2) [when the county's population is at least 250,000], execute deeds of real property in trust to the board [that] exceed $50,000?

p. 1383

Your question arises from the language of article 2372p-3, section 6(f), V.T.C.S., which states as follows:

> Upon notice from the board that the application has been tentatively approved, the applicant shall then:
>
> (1) deposit with the county treasurer of the county in which the license is to be issued a cashier's check, certificate of deposit, cash, or cash equivalent in the amount indicated by the applicant under Subdivision (5) of Subsection (a) of Section 6 of this Act, but in no event less than $50,000 except in counties with populations of less than 250,000 persons by the most recent federal census, the amount for applicants in said counties shall be $10,000 to be held in a special fund to be called the bail security fund; or
>
> (2) execute in trust to the board deeds to the property listed by the applicant under Subdivision (4) of Subsection (a) of Section 6 of this Act, which property shall be valued in the amount indicated on an appraisal by a real estate appraiser who is a member in good standing of a nationally recognized professional appraiser society or trade organization that has an established code of ethics, education program, and professional certification program, but in no event less than $50,000 valuation, except in counties with populations of less than 250,000 persons by the most recent federal census, the amount for applicants in said counties shall be $10,000, the condition of the trust being that the property may be sold to satisfy any final judgment forfeitures that may be made in bonds on which the licensee is surety after such notice and upon such conditions as are required by the Code of Criminal Procedure, 1965, as amended, in bond forfeiture cases; the board shall file the deeds of trust in the records of each county in which the property is located, and the applicant shall pay the filing fees.
>
> (3) If the licensee is a corporation, it shall furnish to the sheriff an irrevocable letter of credit as a cash equivalent to satisfy any final judgment of forfeiture that may be made on any bonds on which the corporate licensee is surety.

Although this section is far from clear, we think it means that, instead of supplying security in the form required by subdivisions (1) and (2), corporations must submit as

security an irrevocable letter of credit in compliance with subdivision (3).[1]  The general structure of the section strongly suggests the legislature intended to give individuals who are tentatively approved for a license two alternative ways to meet the security requirements, but to require corporations to submit a letter of credit as security.  Contrary to the suggestion in a previous opinion from this office, we do not believe that subdivision (3) requires a corporate bondsman to submit a letter of credit after a final judgment of forfeiture on a bail bond.  *See* Attorney General Opinion JM-1245 (1990) n. 4.  The preamble to the three subdivisions states that subsection 6(f) takes effect "[u]pon notice from the board that the application has been tentatively approved."  This language indicates that the entire section deals with security that must be posted at that time.  Furthermore, we do not believe that section 6(f) can be read to require corporate bondsmen to comply with either subdivision (1) or subdivision (2), along with subdivision (3).  To be eligible for a license as a bail bondsman, a corporation must be qualified to write fidelity, guaranty, and surety bonds under the Texas Insurance Code.  *See* V.T.C.S. art. 2372p-3, § 3(d)(2).  A corporation qualified to write fidelity, guaranty, and surety bonds must meet fairly stringent capitalization requirements.  In addition, it must post $50,000 in securities or cash with the State Treasurer as security.  Ins. Code arts. 8.05, 15.06, 15.07.  In light of this security requirement, we do not believe that the legislature could have intended to require corporations to post more security than individuals to qualify for a bail bondsman's license.

Your third and fourth questions concern the irrevocable letter of credit and are as follows:

> 3.  If the irrevocable letter of credit is the only security necessary for a corporation to execute bonds, then how much money must the letter of credit cover?

> 4.  Must the letter of credit be of unlimited time or must the sheriff accept a letter of credit with a time limit?

Reading the provisions of section 6(f) together, we conclude that, although subdivision (3) requires a corporation to submit security in the form of a letter of credit, subdivisions (1) and (2) dictate the amount of security that must be provided.  In other words, in counties with populations of 250,000 or more, the credit amount must be at

---

[1] In our opinion, this reading edges out five or six alternative, yet reasonable, readings.  For example, a reasonable argument can be made that section 6(f) means a corporate bondsman does not have to post any security at the time its license is tentatively approved, but must give the sheriff a letter of credit at some later time.  *See* Attorney General Opinion JM-1245 (1990) n. 4.  Likewise, the section can be read to require a corporate bondsman to give the sheriff a letter of credit in addition to the same security required of an individual bondsman.  We think our reading is the better one because it is consistent with the general topic of section 6(f).  However, we also think that legislative clarification would be desirable.

least $50,000; in counties with populations of less than 250,000, the credit amount must be at least $10,000.

We also conclude that the sheriff must accept a letter of credit even though it has a time limit. As a practical matter, few, if any, responsible financial institutions would issue in irrevocable letter of credit for an unlimited time. Furthermore, nothing in the statute permits the sheriff or a county bail-bond board to insist on a letter of credit for an unlimited time. Because the act expressly sets forth the requirements for obtaining a license as a bail bondsman, county bail-bond boards lack the authority to impose additional requirements on those seeking a bail-bondsman's license. *Dallas County Bail Bond Board v. Stein*, 771 S.W.2d 577, 580 (Tex. App.--Dallas 1989, writ denied). If county bail-bond boards lack this authority, county sheriffs must also lack this authority. Therefore, the sheriff cannot insist on a letter of credit for an unlimited time.[2]

Your remaining questions concern the appraisal value of the real estate an applicant intends to place in trust with the board. In particular, you ask

> 5. Does the Bail Bond Board have the authority to question the appraisal value of the real estate the applicant intends to convey in trust to the board?
>
> 6. Does the Bail Bond Board have the authority to obtain an independent appraisal value of the real estate the applicant intends to convey in trust to the board?
>
> 7. Does the Bail Bond Board have the authority to require the real estate the applicant intends to place in trust with the Board be located within the County of Denton, Texas?
>
> 8. Does the Bail Bond Board have the authority to require that the renewal application for a license include a current re-appraisal of the real estate the applicant intends to place in trust with the Board?

With respect to questions five and six, we conclude that the bail-bond board does not have the authority to question the appraisal value of the real estate or to obtain an independent appraisal of the real estate. As we mentioned above, county bail-bond boards lack the authority to impose different or additional requirements for obtaining a bondsman's license. *Stein*, 771 S.W.2d at 580. With respect to the real estate that an applicant intends to convey in trust to the board if the board grants the license, article

---

[2]However, we also note that a corporate bondsman must have the appropriate security on file when it writes bail bonds.

2372p-3 imposes two requirements.[3]  First, the applicant must list the property in his or her application for the license.  V.T.C.S. art. 2372p-3, § 6(a)(4).  Second, after receiving notice that the application has been tentatively approved, the applicant must

> execute in trust to the board deeds to the property listed by the applicant . . . *which property shall be valued in the amount indicated on an appraisal by a real estate appraiser* who is a member in good standing of a nationally recognized professional appraiser society or trade organization that has an established code of ethics, educational program, and professional certification program, but in no event less than $50,000 valuation, except in counties with populations of less than 250,000 persons . . . the amount for applicants in said counties shall be $10,000 . . . .

V.T.C.S. art. 2372p-3, § 6(f)(2) (emphasis added).  The Texas courts have interpreted this provision as requiring an applicant to submit, along with the deed of trust, an appraisal in the minimum amount required by the section and by an appraiser who has the qualifications listed in the section. *Dallas County Bail Bond Board v. Black*, 833 S.W.2d 247, 249 (Tex. App.--Dallas 1992, no writ).  If the applicant complies with these requirements, the applicant has produced sufficient security to qualify for a bondsman license, and the bail-bond board has no authority to require further proof that the security is adequate.

As you indicate, the same principle resolves your seventh question and leads to the conclusion that the Denton County Bail Bond Board cannot require all real estate placed in trust with the board by an applicant to be located in Denton County.  Requiring that the real estate be located in the county issuing the license would impose an additional burden on the applicants in excess of the statutory requirements. *See Bexar County Bail Bond Board v. Deckard*, 604 S.W.2d 214 (Tex. Civ. App.--San Antonio 1980, no writ). Although article 2372p-3 does not explicitly say the property can be anywhere, it does direct county bail-bond boards to file the deeds of trust in the counties where the property is located.  V.T.C.S. art. 2372p-3, § 6(f)(2).  This directive implies that the legislature expected some of the real estate to be located in counties other than the county issuing the license.  The most recent legislature reinforced this conclusion further by considering and rejecting an amendment to article 2372p-3 that would have, among other things, explicitly required the real estate to be located in the county issuing the license. *See* H.B. 477, 72d Leg. (1991).

---

[3]If the applicant intends to provide security other than real estate, the applicant does not need to comply with either of these requirements.

In response to your last question, we conclude that the bail-bond board not only has the authority to require, but also must require a renewal application to include a current appraisal *from each taxing unit* and an appraisal by a real estate appraiser who has the qualifications outlined in section 6(f)(2).[4]  Article 2372p-3, section 8(a), V.T.C.S., states that a renewal application must have the same form and content as an original application for a license under the act.  The act requires original applications to list the real estate the applicant intends to convey in trust to the board.  V.T.C.S. art. 2372p-3, § 6(a)(4).  For each parcel of real estate listed in the application, the applicant must also provide, among other information, the following:

> current statements *from each taxing unit* with power to assess or collect taxes against the property . . . indicating the net value of the property according to the current appraisal made by a real estate appraiser . . . .

*Id.* § 6(a)(4)(B) (emphasis added).  The act also requires a first-time applicant to provide an appraisal of each parcel by an appraiser who has the qualifications listed in section 6(f)(2).  *Id.* § 6(f)(2), *as interpreted by Black,* 833 S.W.2d at 249.  Read together, sections 6(a)(4)(B), 6(f)(2) and 8(a) require that a renewal application include a current appraisal of the property from each taxing unit and an appraisal from a real estate appraiser who meets the qualifications set out in section 6(f)(2), V.T.C.S.

## S U M M A R Y

There is no limit on the value of the bonds a corporate bail bondsman may issue.

An irrevocable letter of credit is the only security a corporation must provide when its application for a bail bondsman's license is tentatively approved by the county bail-bond board.  In counties with populations of 250,000 or more, the credit amount must be at least $50,000; in counties with populations of less than 250,000, the credit amount must be at least $10,000.  The sheriff cannot, however, insist on credit for an unlimited time; the sheriff must accept a letter of credit even though it has a time limit.

County bail-bond boards lack the authority to impose different or additional requirements for obtaining a bail bondsman's license.  Therefore, a county bail-bond board cannot question the appraisal

---

[4]This conclusion assumes that the bondsman seeking to renew his or her license used real property as security to obtain the original license.

value or obtain an independent appraisal of the real estate an applicant for a bail-bondsman's license intends to convey in trust to the board as security. In addition, a county bail-bond board cannot require that the real estate be located in that county. On the other hand, a board must require a renewal application to contain a current appraisal of the real estate from each taxing unit and an appraisal from a real estate appraiser who meets the qualifications set out in article 2372p-3, section 6(f)(2), V.T.C.S.

Very truly yours,

DAN MORALES
Attorney General of Texas

WILL PRYOR
First Assistant Attorney General

MARY KELLER
Deputy Attorney General for Litigation

RENEA HICKS
State Solicitor

MADELEINE B. JOHNSON
Chair, Opinion Committee

Prepared by Margaret A. Roll
Assistant Attorney General