## DALLAS COUNTY BAIL BOND BOARD, Appellant,

v.

## Harold Rhett STEIN, Appellee.

### No. 05–87–01363–CV.

Court of Appeals of Texas, Dallas.

April 25, 1989.

Rehearing Denied June 5, 1989.

Alec B. Stevenson, III, Donald G. Davis, Dallas, for appellant.

John D. Nation, Dallas, for appellee.

Before STEWART, ROWE and BAKER, JJ.

ROWE, Justice.

Appellee, Harold Rhett Stein filed suit to enjoin appellant, Dallas County Bail Bond Board, from interfering with his employment as an agent of a licensed bail bondsman. The trial court granted the injunction and ordered the Board to issue Stein an employee's bail bond identification card. In two points of error, the Board complains that the trial court erred in concluding that a probated state conviction and a probated federal conviction are not final convictions. In two counterpoints, Stein challenges this Court's jurisdiction over this appeal and the Board's authority to regulate employees of bail bondsmen. For the reasons discussed below, we sustain the Board's first point of error and dissolve the injunction.

*Background*

The record reflects that for twelve years Stein was a licensed bondsman. While licensed, Stein was convicted of deadly assault on a court participant under Texas law and of possession in commerce and affecting commerce of a firearm by a felon under federal law. Both crimes are felonies. At the time of trial, Stein was on probation for each offense. In September 1986, Stein's license expired, and he did not renew it. One month later, Stein began working as an employee of a licensed bonding company. Stein testified that his duties included meeting and negotiating with members of the public for bail bonds and collecting money for such bonds.

In December 1986, the Board adopted rule D1, which became effective December 23, 1986. Rule D1 provides:

1. "Agent" as used in this rule shall mean any person hired by the licensee who performs any of the following duties:

   (a) meets and negotiates with members of the public for the purpose of selling bail bonds;

   (b) receives money as a fee or money or property as collateral for bail bonds;

   (c) presents bonds to the Sheriff's Department for approval;

   (d) interviews or takes information from persons who have been released from jail pursuant to a bond provided by the licensee.

2. No licensee shall employ, as an agent, any person who, after August 27, 1973, commits or has committed an offense for which he has been finally

convicted, such offense being a felony or a misdemeanor involving moral turpitude.

3. This rule is effective when approved by the Bail Bond Board and posted for the required period of time. Agents presently employed by a licensee who do not qualify as such under this rule may continue such employment until the expiration date of their employer's present license.

After the adoption of this rule, Stein applied to the Board for an employee's identification card, but the Board denied his application because of the two felony convictions. Thereafter, a representative of the Dallas County Sheriff's Department visited Stein's employer and threatened to close down the business if he found Stein working there.

Stein filed this suit to enjoin the Board from interfering with his continued employment as an employee of a licensee and to compel the Board to issue an appropriate identification card. Following two hearings, the trial court granted the injunction, concluding that while the Board did have authority to regulate employees of bondsmen, Stein's probated state court conviction was not final. The trial court further concluded that in the absence of proof to the contrary, it would presume that federal law regarding the finality of Stein's conviction was identical to Texas law. For these reasons, the trial court concluded that Stein had not been finally convicted of any felony.

### Jurisdiction over Appeal

■ Before addressing the Board's contentions, we shall first dispose of the arguments raised by Stein's counterpoints in support of the trial court's judgment. In his second counterpoint, Stein argues that this Court lacks jurisdiction over this cause because the Board failed to file a cost bond and is not exempt from the cost bond requirement. A party desiring to appeal must file a cost bond unless such party is excused by law. *See* TEX.R.APP.P. 40(a)(1) & 46(a). There is no statute specif-

ically excusing bail bond boards; however, a county is exempt from the cost bond requirement. *See* TEX.CIV.PRAC. & REM. CODE ANN. § 6.001(b)(4) (Vernon Supp.1989). Stein contends that the Board is not the same as the county itself, and, consequently, this section does not excuse it from filing a cost bond. We disagree.

In *Dallas County Appraisal District v. Institute for Aerobics Research,* the supreme court addressed a similar issue concerning appeal bonds under the Texas Tax Code. 751 S.W.2d 860 (Tex.1988). In that case, a provision of the Tax Code expressly exempted counties from the cost bond requirement but did not expressly exempt the appraisal district or the appraisal review board. The supreme court held that the exemption of the county also applied to the appraisal district and to the review board. *Id.* at 861–62. In so holding, the supreme court reasoned:

It would be rather incongruous to exempt the county from the requirement of filing an appeal bond, but then to hold that the legal entity through which the county performs its governmental function must itself post an appeal bond. The undesirable state of having public funds tied up in litigation militates against such a holding.

*Id.* at 861.

We find this same reasoning persuasive in the instant case. The Board in this case is a governmental agent of the county for purposes of regulating the bail bond industry. As such, the same statute which excuses the county from filing a cost bond also excuses the Board. We overrule Stein's second counterpoint.

### Authority of Board

■ In his first counterpoint, Stein challenges the authority of the Board to regulate employees of bail bond licensees. Stein maintains that the statute regulating bail bondsmen [1] does not regulate employees of bondsmen and does not authorize county bail bond boards to do so. Consequently, Stein asserts that the Board may

---

1. TEX.REV.CIV.STAT.ANN. art. 2372p–3 (Vernon Supp.1989) [hereinafter "Bail Bond Act"].

not prohibit licensed bondsmen from employing persons who have been convicted of felonies or misdemeanors involving moral turpitude. We disagree.

In support of his position, Stein has cited a recent attorney general opinion which concludes that county bail bond boards may not prohibit licensed bondsmen from employing persons who have been convicted of felonies and crimes of moral turpitude. Op.Tex.Att'y Gen.No. JM–1012 (1989). In that opinion, the attorney general relied heavily upon prior case law holding that bail bond boards may not impose burdens, conditions, or restrictions in addition to those which the Bail Bond Act imposes. *See Austin v. Harris County Bail Bond Bd.*, 756 S.W.2d 65, 67 (Tex.App.—Houston [1st Dist.] 1988, writ denied); *Texas Fire & Casualty Co. v. Harris County Bail Bond Bd.*, 684 S.W.2d 177, 178 (Tex. App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.); *Bexar County Bail Bond Bd. v. Deckard*, 604 S.W.2d 214, 216 (Tex.Civ. App.—San Antonio 1980, no writ). We think that the attorney general's reliance on these cases was misplaced. In each of these cases, the county boards had denied applications for licenses on the ground that the applicant failed to comply with certain local rules. Since the Bail Bond Act expressly sets forth the requirements for a license, these courts correctly reasoned that the local boards lacked authority to impose different or additional requirements. As Stein points out, however, the Bail Bond Act does not expressly set forth eligibility requirements for employees of licensees. Thus, such analysis is inapplicable to the present case.

■ Under Texas administrative law, an agency's rule-making powers may be expressly conferred on it by statute or implied from other powers and duties given or imposed by statute. *See Texas Liquor Control Bd. v. Super Sav. Stamp Co.*, 303 S.W.2d 536, 539 (Tex.Civ.App.—San Antonio 1957, writ ref'd n.r.e.); TEX.JUR. 3d *Administrative Law* § 11 (1979). The only requirement is that an agency's rules must be consistent with the laws of this state. *Gerst v. Oak Cliff Sav. & Loan Ass'n*, 432 S.W.2d 702, 706 (Tex.1968). In determining whether an administrative agency has exceeded its rule-making powers, the critical factor is whether the agency's rule harmonizes with the general objectives of the statute involved. *Gerst*, 432 S.W.2d at 706; *Jefco, Inc. v. Lewis*, 520 S.W.2d 915, 921 (Tex.Civ.App.—Austin 1975, writ ref'd n.r.e.). Where a statute expressly authorizes an agency to regulate an industry, it impliedly authorizes the agency to promulgate rules and regulations necessary to accomplish such purpose. *Super Sav. Stamp Co.*, 303 S.W.2d at 539. By conferring upon an agency the power to make rules and regulations necessary to carry out the purposes of an act, the Legislature forecloses the argument that it intended to spell out the details of regulating an industry. *Super Sav. Stamp Co.*, 303 S.W.2d at 540, cited with approval in *Gerst*, 432 S.W.2d at 706.

■ The Bail Bond Act declares the business of executing bail bonds to be a business affecting the public interest. Bail Bond Act § 1. The Act also expressly delegates to the Board the power and duty "to exercise any powers incidental or necessary to the administration of this Act, to supervise and regulate all phases of the bonding business and enforce this Act within the county, and to prescribe and post any rules necessary to implement this Act." *Id.* at § 5(f)(1). Such broad rule-making power impliedly authorizes the Board to supervise and regulate employees of bondsmen to the extent that such employees perform meaningful duties in the bonding business. By implementing rule D1, the Board extended a restriction that the Bail Bond Act imposes on licensees to certain employees of such licensees. *See id.* at § 3(c). In doing so, the Board merely foreclosed the possibility that an individual who is ineligible for a license under the Act could circumvent this requirement by operating a bonding business as an agent of a licensee. We note that the Board did not impose the restriction of rule D1(2) upon all employees in the bonding business regardless of their duties. Instead, the Board imposed such restriction only upon those employees, defined as "agents", who perform particular,

meaningful duties in the process of issuing bonds. Stein's testimony at trial established that he performed at least two of the duties used to define an "agent" within the meaning of rule D1. We hold that the Board did not exceed its rulemaking powers by implementing rule D1 or by applying it to Stein. Accordingly, we overrule Stein's first counterpoint.

### *Finality of Convictions*

■ In its two points of error, the Board asserts that the trial court erred in concluding that a probated state court conviction and a probated federal conviction were not final convictions. The Board maintains that probation only suspends the imposition of sentence and does not in any way affect the finality of a conviction for purposes of rule D1. In response, Stein points to various criminal cases which suggest that a probated conviction is not final until probation has been revoked. We agree with the Board's contention that probation in no way affects the finality of a conviction for purposes of rule D1.

Ordinarily, administrative rules are construed like statutes. *Lewis v. Jacksonville Bldg. & Loan Ass'n,* 540 S.W.2d 307, 310 (Tex.1976); *see also Texas Liquor Control Bd. v. Attic Club, Inc.,* 457 S.W.2d 41, 45 (Tex.1970) (rule promulgated by administrative agency considered under same principles applicable to legislative acts), *appeal dismissed,* 400 U.S. 986, 91 S.Ct. 459, 27 L.Ed.2d 435 (1971). Thus, we must attempt to ascertain and give effect to the intent of the Board's rule. *See Lewis,* 540 S.W.2d at 310. Although we are not necessarily bound by the Board's construction of rule D1, we note that courts frequently defer to an administrative agency's construction of its own rules. *See Texas Health Facilities Comm'n v. El Paso Medical Surgical Assocs.,* 573 S.W.2d 291, 295 (Tex.Civ.App.—Tyler 1978, writ ref'd n.r.e.). With these principles in mind, we shall now focus on interpreting rule D1.

We first note that the language of the rule is remarkably similar to certain language contained within the Bail Bond Act. Section 3(c) of the Bail Bond Act provides:

No person shall be eligible for a license under this Act, who after the effective date of this Act, commits an offense for which he is finally convicted, such offense being a felony or misdemeanor involving moral turpitude.

The Board used very similar language [2] in section 2 of rule D1:

No licensee shall employ, as an agent, any person who, after August 27, 1973, commits or has committed an offense for which he has been finally convicted, such offense being a felony or a misdemeanor involving moral turpitude.

At the first hearing in this cause below, the chairman of the Board, testifying as to the purpose of rule D1, explained this similarity as follows:

The purpose of the rule would be in that the legislature has declared executing bail bonds a business involving the public interest and the wording in the statutes relating to the type of people that the legislature desired to be in the bonding business, the board has looked at that and passed a rule for employees also to have a reputation involving honesty, truthful, fair dealing to coincide with the licensees themselves is what the purpose of the rule was.

In light of this testimony and the similarity between the rule and the act, we conclude that the intent of rule D1 was to extend the restriction that the Bail Bond Act imposes on licensees to certain significant employees of such licensees. Thus, we shall interpret rule D1 in accordance with our interpretation of the similar section of the Bail Bond Act.

We have found no cases addressing whether a party serving probation for an offense has been "finally convicted" within the meaning of the Bail Bond Act. Likewise, we have discovered no cases addressing this issue under any other licensing statute containing a similar restriction.[3]

---

2. We note that the Board even incorporated the effective date of the Bail Bond Act into its rule.

3. *Cf.* TEX.REV.CIV.STAT.ANN. art. 179d, § 13b(c)(1) (Vernon Supp.1989) (bingo equipment distributors); TEX.REV.CIV.STAT.ANN.

Thus, this issue appears to be one of first impression. For certain purposes in state criminal proceedings, a conviction is not treated as final while the accused is still serving a probated sentence.[4] We decline, however, to apply such interpretation broadly to a civil licensing statute.

■ "Probation" is the release of a convicted defendant under conditions imposed by the court for a specified period during which the imposition of sentence is suspended. TEX.CODE CRIM.PROC.ANN. art 42.12, § 2(b) (Vernon Supp.1989). Probation affects only the imposition of sentence, not the judgment of conviction. *See Nealy v. State*, 500 S.W.2d 122, 125 (Tex. Crim.App.1973); Onion, *Practice Commentary*, TEX. CODE CRIM.PROC.ANN. art. 42.12 (Vernon 1979). Thus, the sentence to be served, either actually confined or on probation, has no effect on the finality of a conviction. *Ashley v. State*, 527 S.W.2d 302, 305 (Tex.Crim.App.1975).

■ We recognize that the satisfactory completion of the probationary period releases the probationer from all penalties and disabilities resulting from the conviction. *See* TEX. CODE CRIM.PROC.ANN. art 42.12, § 7 (Vernon Supp.1989). The plain language of this statute clearly suggests that while on probation, the probationer is subject to some penalties and disabilities associated with conviction. By successfully fulfilling the terms of his probation, the probationer is *released* from such disabilities *at the expiration of the period of probation. Id.* This release does not affect the finality of the conviction; rather,

it merely removes those legal disadvantages associated with such conviction. Accordingly, we conclude that for purposes of the Bail Bond Act and rules adopted pursuant to it, whether Stein was on probation as a result of his convictions has no bearing on whether such convictions were final. Thus, we sustain the Board's first and second points of error.

We reverse the trial court's judgment and dissolve the injunction.

art. 4413(29bb), § 11B(a)(1) & (2) (Vernon Supp.1989) (private investigators and security agents); TEX.REV.CIV.STAT.ANN. art. 4413(29cc), § 8(a)(1) (Vernon Supp.1989) (polygraph examiners); TEX.REV.CIV.STAT.ANN. art. 4506a (Vernon Supp.1989) (revocation of doctor's license for drug-related offenses); TEX. REV.CIV.STAT.ANN. art. 4512b, § 14a(4) (Vernon Supp.1989) (chiropractors); TEX.REV.CIV. STAT.ANN. art. 4512c, § 23(a)(1) (Vernon Supp. 1989) (psychologists); TEX.REV.CIV.STAT. ANN. art. 4512e, § 19(a)(3) (Vernon Supp.1989) (physical therapists); TEX.REV.CIV.STAT.ANN. art. 4542a–1, § 26A (Vernon Supp.1989) (revocation of pharmacist's license for drug-related offenses); TEX.REV.CIV.STAT.ANN. art. 4549, § 3(b) (Vernon Supp.1989) (revocation or suspension of dentist's license); TEX.REV.CIV.

STAT.ANN. art. 8700, § 7(a)(5) (Vernon Supp. 1989) (auctioneers).

4. *Cf. Ex Parte Brown*, 662 S.W.2d 3, 4 (Tex.Crim. App.1983) (habeas corpus jurisdiction); *Ex Parte Payne*, 618 S.W.2d 380, 381 (Tex.Crim.App. 1981) (habeas corpus jurisdiction); *Ex Parte Murchison*, 560 S.W.2d 654, 656 (Tex.Crim.App. 1978) (enhancement); *White v. State*, 171 Tex. Crim. 683, 353 S.W.2d 229, 230 (1961) (enhancement); *Ellis v. State*, 134 Tex.Crim. 346, 115 S.W.2d 660, 662 (1938) (enhancement); *Fetters v. State*, 108 Tex.Crim. 282, 1 S.W.2d 312, 313 (1927) (enhancement); *Brittian v. State*, 85 Tex. Crim. 491, 214 S.W. 351, 352 (1919) (enhancement).