**Marjorie A. WALSTAD d/b/a Immediate Bail Bonds, Appellant,**

v.

**DALLAS COUNTY BAIL BOND BOARD, Appellee.**

No. 05–97–00110–CV.

Court of Appeals of Texas, Dallas.

June 15, 1999.

Stephen G. McDonald, Lloyd E. Ward, Dallas, for Appellant.

John Clark Long, IV, Asst. Dist. Atty., Dallas, for Appellee.

Before Justices KINKEADE, MOSELEY, and BRIDGES.

## OPINION

Opinion By Justice BRIDGES.

Marjorie A. Walstad d/b/a Immediate Bail Bonds appeals from a summary judgment granted in favor of the Dallas County Bail Bond Board (the board). In a single point of error, Walstad argues the trial court erred in finding that the board was authorized to obtain its own appraisal of real property pledged as security for bail bonds. We reverse the trial court's judgment and remand this cause for further proceedings.

## FACTS

Walstad was licensed to write bail bonds in Dallas County, and her license had an expiration date of April 1996. In January 1996, Walstad submitted her application to renew her license and tendered real property to be pledged as collateral for issuing bail bonds. Walstad listed six parcels of property as collateral but submitted appraisals on only two. She requested that the ad valorem tax appraisal values be used on the other four properties, and the board agreed. However, the board obtained independent certified appraisals for the two properties Walstad submitted with appraisals. The board did not accept Walstad's appraised value of the properties. Instead, the board valued the properties at an amount between the appraised value Walstad submitted and the value set by the independent appraisals. Walstad then intervened in a pending lawsuit against the board and filed a motion for summary judgment in which she asserted that the board overstepped its statutory authority in obtaining independent appraisals. The board filed a motion for summary judgment asserting that it was impliedly authorized to obtain its own appraisal of property. The trial court granted the board's motion for summary judgment.

## STANDARD OF REVIEW

The function of summary judgment is not to deprive a litigant of the right to a full hearing on the merits of any real issue of fact but to eliminate patently unmeritorious claims and untenable defenses. *See Gulbenkian v. Penn*, 151 Tex. 412, 416, 252 S.W.2d 929, 931 (1952). In reviewing a summary judgment record, this Court applies the following standards:

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true.

3. Every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor.

*Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). The purpose of the summary judgment rule is not to provide either a trial by deposition or a trial by affidavit, but rather to provide a method of summarily terminating a case when it clearly appears that only a question of law is involved and that no genuine issue of fact remains. *See Gaines v. Hamman*, 163 Tex. 618, 626, 358 S.W.2d 557, 563 (1962). For the defendant, as movant, to prevail on a summary judgment, it must either disprove at least one element of the plaintiff's theory of recovery or plead and conclusively establish each essential element of an affirmative defense, thereby rebutting the plaintiff's cause of action. *See International Union UAW Local 119 v. Johnson Controls, Inc.*, 813 S.W.2d 558, 563 (Tex.App.-Dallas 1991, writ denied) (op. on reh'g). An issue is conclusively established if ordinary minds cannot differ as to the conclusion to be drawn from the evidence. *See Triton Oil & Gas Corp. v. Marine Contractors & Supply, Inc.*, 644 S.W.2d 443, 446 (Tex.1982).

In a summary judgment case, the question on appeal is whether the summary judgment proof establishes, as a matter of law, that there is no genuine issue of fact as to one or more of the essential elements

of the cause of action. *See Gibbs v. General Motors Corp.,* 450 S.W.2d 827, 828 (Tex. 1970).

## DISCUSSION

■ Walstad argues that the trial court erred in finding the board was authorized to obtain its own appraisal of real property pledged or proposed to be pledged as security for bail bonds. According to Walstad, the board was not allowed to consider its appraiser's opinion of the value of the property as well as the appraisal she submitted in determining the value to be accepted.

The Bail Bondsman Act provides that an application for renewal of a bondsman license shall have the same form and content as an application for an original license. TEX.REV.CIV. STAT. ANN. art. 2372p–3 (Vernon Supp.1999). An applicant for a bondsman license must file an application that includes, among other things, current statements from each taxing unit with power to assess or collect taxes against the property. The statements should indicate that there are no outstanding tax liens against the property and also indicate the net value of the property according to the current appraisal made by a real estate appraiser who is a member in good standing of a nationally recognized professional appraiser society or trade organization that has an established code of ethics, educational program, and professional certification program. Additionally, the statements should be accompanied by a statement from the applicant agreeing to keep all taxes paid on the property while it remains in trust. *Id.* art. 2372p–3, § 6(a)(4)(B). The applicant must then execute in trust to the board deeds to the property listed by the applicant under section 6(a)(4)(B), which property "shall be valued in the amount indicated on an appraisal by a real estate appraiser" meeting the same qualifications listed in section 6(a)(4)(B). *See id.* art. 2372p–3, § 6(f)(2).

Both Walstad and the board cite to this Court's opinion in *Dallas County Bail Bond Board v. Black,* 833 S.W.2d 247 (Tex.

App.-Dallas 1992, no writ) (*Black I* ). In *Black I,* Black, a bail bondsman, submitted a $218,000 property appraisal, prepared by a member of an independent appraisal institute, in the process of placing the property on his cash account to increase his limits of liability for executing bail bonds. *Black I,* 833 S.W.2d at 248. The Dallas County Central Appraisal District had appraised the property at $42,240 for tax purposes. *Id.* The board placed the property value at $145,000. *Id.* When Black went before the board for relicensing, the board reduced the value to $42,000. *Id.* This Court reasoned that the statute did not indicate that a taxing unit could perform the appraisal that constituted the value in section (6)(f)(2). *Id.* at 249. Therefore, the $42,000 figure submitted by the district was not properly before the board as evidence of the property's value, and only one valid appraisal, in the amount of $218,000, was presented. *Id.* The Court did not address the board's contention that it was vested with discretion in choosing between different appraisal values submitted. *Id.* Thus, *Black I* is not dispositive of the issues presented in this appeal.

■ Here, the board had a certified appraiser, as required by section (6)(f)(2), perform the appraisal. The board argues that the legislature has authorized the board to regulate all phases of the bail bond business, citing this Court's opinion in *Black v. Dallas County Bail Bond Board,* 882 S.W.2d 434, 438 (Tex.App.-Dallas 1994, no writ) (*Black II* ). Therefore, the board argues, it was authorized to base its licensing decision on a valuation of Walstad's property obtained from an appraiser of the board's choosing. Walstad argues that article 2372p–3 contains no provisions allowing the board to reject her appraisal or obtain its own appraisal. As Walstad points out, House Bill 1348, introduced in February 1997, proposed amending article 2372p–3 to include the following: "The board may obtain an independent appraisal of real estate listed by the applicant under subsection (A)(4) of this section as the board determines necessary to ascertain the value of the property." Tex. H.B.

1348, 75 th Leg., R.S. (1997). The current version of article 2372p–3 does not contain the language of the proposed amendment and does not explicitly authorize the board to obtain an independent appraisal. *See* TEX.REV.CIV. STAT. ANN. art. 2372p–3, § 6(d) (Vernon Supp.1999). Further, county bail bond boards lack the authority to impose different or additional requirements for obtaining a bondsman's license. *Dallas County Bail Bond Bd. v. Stein,* 771 S.W.2d 577, 580 (Tex.App.-Dallas 1989, writ denied).

We note that the board may suspend or revoke a license for, among other things, fraudulently obtaining a license, making a false statement or misrepresentation in an application for an original or renewal license, or violating a provision of the Act. *See* TEX.REV.CIV. STAT. ANN. art. 2372p–3, § 9 (Vernon Supp.1999). Nevertheless, nothing authorizes the board to suspend or revoke a license in the absence of fraud or violation of the Act. Similarly, the clear language of the Act provides no authorization for the board to obtain an independent appraisal of property submitted with a license application. It is true that the legislature proposed an amendment to article 2372p–3 that would have specifically authorized the board to obtain an independent appraisal. However, that amendment was not codified. Under these circumstances, we decline to extend the board's authority to base its licensing decision on a valuation of property obtained from an appraiser selected by the board.[1] We sustain Walstad's sole point of error.

We reverse the trial court's judgment and remand this cause for further proceedings.

---

1. The Texas Attorney General has addressed the issue of whether a bail bond board has authority to question the appraisal value of property an applicant intends to convey in trust to the board and to obtain an independent appraisal of such property. *See* Op. Tex. Att'y Gen. No. DM–264 (1994). Opinion DM– 264 concludes that, "[i]f the applicant complies with these requirements, the applicant has produced sufficient security to qualify for a bondsman's license, and the bail bond board has no authority to require further proof that security is adequate." *Id.*