Opinion issued March 10, 2005










     




In The
Court of Appeals
For The
First District of Texas




NO. 01-02-01043-CV




HARRIS COUNTY BAIL BOND BOARD, INTERNATIONAL FIDELITY
INSURANCE COMPANY, AND ALLEGHENY CASUALTY COMPANY,
Appellants

V.

CARL R. PRUETT AND NATIONAL AMERICAN INSURANCE
COMPANY d/b/a ALLIED BONDING COMPANY, Appellees




On Appeal from the 125th District Court
Harris County, Texas
Trial Court Cause No. 2002-09290




O P I N I O N
On this day, the Court considered the motions for rehearing filed by all parties. 
We OVERRULE all motions for rehearing. However, we withdraw our opinion and
judgment of October 14, 2004, and issue this opinion and judgment in its stead.
          In this appeal, we consider the extent of (1) the rule-making authority granted
to a local bail bond board and (2) the First Amendment protection afforded
commercial speech. The Harris County Bail Bond Board (“the Board”) and two
insurance companies that issue bail bonds—International Fidelity Insurance Company
and Allegheny Casualty Company—appeal from a summary judgment granted in
favor of Carl R. Pruett, a bail bondsman, and National American Insurance Company
d/b/a/ Allied Bonding Company, another insurance company that issues bail bonds. 
We decide whether (1) the Board had the power to pass two rules that attempt to
control the solicitation of business by bonding companies and (2) the rules adopted
by the Board are an unconstitutional restraint on the bonding companies’ First
Amendment rights. We affirm in part and reverse and render in part.
BACKGROUND
A. The Bail Bond Board Perceives a Problem
          In the late 1990's, the Harris County Bail Bond Board


 began receiving
complaints from law enforcement officers, as well as citizens, about bail bond
solicitation practices in the county. The Board perceived two specific areas of
concern. First, the Board received complaints about bondmen contacting defendants
with unexecuted warrants and “tipping [the defendants] off” that they would soon be
arrested. These complaints raised concerns about defendants fleeing from arrest,
officer safety, and victim safety, particularly in cases involving domestic violence. 
Second, the Board received complaints about bondmen conducting telephone
solicitations during non-business hours. Some examples of these complaints included
telephone solicitations made between the hours of midnight and 5 a.m. and repeated
telephone calls during the first 24 hours after an arrest.
          The Board, in 2000, asked bondsmen to refrain voluntarily from soliciting bond
business before an arrest was made and during non-working hours. After attempts
at voluntary compliance failed, the Board decided to address the issue by passing
rules regarding the solicitation of bail bond business in Harris County.
B. The Board Adopts Rules 24 and 25
          On March 5, 2001, the Board enacted Rule 24


, which prohibits solicitation of
bail bond business from a person with an outstanding arrest warrant, and Rule 25,



which places certain time restrictions on the solicitation of bail bond business after
an arrest has been made. Rule 24 (the unexecuted-warrant rule) creates an exception
for municipal and Justice of the Peace warrants, because those warrants apply to
Class C misdemeanors, offenses punishable by fine only. Rule 25 (the 24-hour rule)
prohibits solicitation within the first 24 hours after arrest, and, after that time expires,
prohibits unsolicited contact between the hours of 9 p.m. and 9 a.m. Monday through
Saturday, and before noon on Sunday. Both Rule 24 and Rule 25 create an exception
to the limitations on the solicitation of bail bond business if there is a prior or existing
business relationship between the bondsman and the person requiring the bond.
C. The Board Suspends Pruett’s License
          In late January 2002, the Board notified Pruett of a hearing on complaints
against him for violating Rules 24 and 25. The first complaint alleged that Pruett
violated Rule 25 by telephoning the complainant at 6:41 a.m. on the day after an
arrest. The second complaint alleged that Pruett violated Rule 24 by calling a
defendant with an outstanding arrest warrant, who then fled the area to avoid arrest.
          At the Board hearing, Pruett acknowledged that he has violated Rules 24 and
25 and that he had instructed his employees to violate the rules as well. Accordingly,
on February 13, 2002, the Board voted to sustain the complaints and suspended
Pruett’s bail bond license for 7 days on each complaint.
D. Pruett Seeks and Obtains an Injunction
          Pruett and National American Insurance Company d/b/a Allied Bonding
Company (collectively, “Pruett”) filed a petition seeking a declaratory judgment,
temporary restraining order, and temporary and permanent injunction. International
Fidelity Insurance Company and Allegheny Casualty Company (collectively,
“International”) intervened in the trial court in support of the local rules and of the
Board’s actions against Pruett. In April 2002, the trial court granted a temporary
injunction in Pruett’s favor.


 
          The parties filed cross-motions for summary judgment, and, on August 29,
2002, the trial court granted Pruett’s motion and denied the Board and International’s
joint motion. The final judgment permanently enjoined the Board from (1) enforcing
Rules 24 and 25, and (2) giving any effect to its order suspending Pruett’s bail-bonding license. The judgment also severed the parties’ claims for attorney’s fees,
thereby rendering the summary judgment final for purposes of appeal.
PROPRIETY OF SUMMARY JUDGMENT
          The Board and International appeal, contending that the trial court erred in
granting summary judgment in Pruett’s favor. In several, related points of error, the
Board and International contend that (1) the Board possessed the power to issue Rules
24 and 25 and (2) Rules 24 & 25 do not unconstitutionally infringe on Pruett’s free
speech rights.
A. Standard of Review
          The summary judgment rule provides a method of summarily ending a case that
involves only a question of law and no fact issues. Tex. R. Civ. P. 166a(c); Nixon v.
Mr. Prop. Mgmt. Co., Inc., 690 S.W.2d 546, 548 (Tex. 1985); Robinson v. Budget
Rent-A-Car Sys., Inc., 51 S.W.3d 425, 428 (Tex. App.—Houston [1st Dist.] 2001, pet.
denied); Cigna Ins. Co. v. Rubalcada, 960 S.W.2d 408, 411 (Tex. App.—Houston
[1st Dist.] 1998, no pet.). When, as here, both sides move for summary judgment, and
the trial court grants one motion and denies the other, we review the summary
judgment evidence presented by both sides and determine all questions presented. 
Comm’rs Court v. Agan, 940 S.W.2d 77, 81 (Tex. 1997); Rubalcada, 960 S.W.2d at
411-12. We render such judgment as the trial court should have rendered. Agan, 940
S.W.2d at 81; Rubalcada, 960 S.W.2d at 411-12. The propriety of summary
judgment is a question of law; therefore, we review the trial court’s decision de novo. 
See Natividad v. Alexsis, Inc., 875 S.W.2d 695, 699 (Tex. 1994). When a trial court’s
order granting summary judgment does not specify the grounds relied upon, we will
affirm the summary judgment if any of the summary judgment grounds are
meritorious. FM Props. Operating Co. v. City of Austin, 22 S.W.3d 868, 872-73
(Tex. 2000). 
          Because this appeal requires us to interpret sections of the Occupation Code,
we restate the basic principles of statutory construction. Interpreting statutes is a
legal matter, subject to de novo review. Bragg v. Edwards Aquifer Auth., 71 S.W.3d
729, 734 (Tex. 2002). The overriding goal of statutory interpretation is to determine
the legislature's intent. Cont’l Cas. Co. v. Downs, 81 S.W.3d 803, 805 (Tex. 2002). 
In order to ascertain legislative intent, we first look to the plain and common meaning
of the words used by the Legislature. Tex. Gov’t Code Ann. § 311.011 (Vernon
1998 & Supp. 2004); Argonaut Ins. Co. v. Baker, 87 S.W.3d 526, 529 (Tex. 2002).
B. Did the Board Act Ultra Vires in Adopting Rules 24 and 25?
          Pruett argues that the Board did not have the power to adopt Rules 24 and 25,
and that, in doing so, it acted ultra vires. Specifically, Pruett argues that (1) the
Legislature did not give the Board the authority to regulate the solicitation of bail
bonds until June 2001—six months after Rules 24 and 25 were passed; (2) Rules 24
and 25 were not authorized by law because they impose requirements relating to a
bonding license that are different from, or in addition to, those in the Bail Bond Act;



(3) the rules do not involve regulating “the execution of a bail bond by a bail bond
surety”; and (4) the rules violate the Open Records Act.


 The Board argues that the
trial court erred if it granted summary judgment on any of the above-referenced
grounds. We address each issue accordingly.
          1. Effect of the 2001 Legislative Amendments
          In June 2001, after the Board adopted Rules 24 and 25, the Legislature passed
section 1704.101 of the Bail Bond Act, which provides as follows:
(a) a board by rule may regulate solicitations or advertisements by or on
behalf of bail bond sureties to protect:
(1) th public from:
(A) harassment;
(B) fraud;
(C) misrepresentation; or
(D) threats to public safety; or
(2) the safety of law enforcement officers.
(b) A bail bond surety, an agent of a corporate surety, or an employee of
the surety or agent may not make, cause to be made, or benefit from
unsolicited contact:
(1) through any means, including in person, by telephone, by
electronic methods, or in writing, to solicit bonding business
related to an individual with an outstanding arrest warrant that has
not been executed, unless the bail bond surety or agent for a
corporate surety has an existing bail bond on the individual; or
(2) in person or by telephone to solicit bonding business:
(A) that occurs between the hours of 9 p.m. and 9 a.m.; or
(B) within 24 hours after:
(i) the execution of an arrest warrant on the
individual; or
(ii) an arrest without a warrant on the individual.
(c) This section does not apply to a solicitation or unsolicited contact
related to a Class C misdemeanor. 

Tex. Occ. Code Ann. § 1704.109 (Vernon 2004).
          Section 1704.109, which basically mirrors Rules 24 and 25, had not been
enacted when the Board passed those rules. Pruett argues that the Legislature’s
passing section 1704.109 shows that it had not authorized the Board to regulate
solicitation before September 1, 2001. Pruett’s motion argues, “There was no reason
for the Legislature to engage in the redundant, pointless act of enacting a statute
granting boards power they already possessed.”
          We find, however, that the Legislature’s subsequent act of providing specific
authority to the Board to regulate bond solicitation is of little assistance in
determining whether the Board possessed the authority to do so before the Legislature
acted. See Ervin v. State, 991 S.W.2d 804, 816 (Tex. Crim. App. 1999) (stating that
“[a]lthough we have held that subsequent enactments by the Legislature may be some
evidence of its intent in a prior version of the statute, we nevertheless give little
weight to those subsequent enactments in interpreting the prior law.”); Bullock v.
ABC Interstate Theatres, Inc, 557 S.W.2d 337, 340 (Tex. Civ. App.—Austin 1977,
writ ref’d n.r.e.) (stating that “[l]egislative intent in the original enactment of a statute
is not drawn from the size of the majority by which a subsequent Legislature amends
or repeals the statute. What the Legislature intended originally is to be found in the
language of the statute itself.”). Therefore, we conclude that the fact that the
Legislature saw fit to enact section 1704.109 to expressly give the Board the authority
to regulate the solicitation of bail bonds does not determine whether the Board
already possessed the power to do so.
          As stated earlier, to ascertain legislative intent, we first look to the plain and
common meaning of the words used by the Legislature. Tex. Gov’t Code Ann. §
311.011 (Vernon 1998); Argonaut, 87 S.W.3d at 529. Therefore, to determine
whether the Board possessed the power to enact Rules 24 and 25 in March 2001, we
look to the statute that grants the Board’s rule-making authority.
          The rule-making authority of the Board is derived from section 1704.101 of the
Bail Bond Act, which provides in part:
A board shall:
(1) exercise powers incidental or necessary to the administration of this
chapter;
(3) supervise and regulate each phase of the bonding business in the
county;
                    (4) adopt and post rules necessary to implement this chapter.

Tex. Occ. Code Ann. § 1704.101(1), (3), (4) (Vernon 2004). Subsection (3) of
section 1704.101 specifically states that bail bond boards shall “supervise and
regulate each phase of the bonding business,”and subsection (4) provides bail bond
boards with the authority to “adopt and post rules” necessary to supervise and
regulate the bonding business. Therefore, the Board adopted its rules with statutory
authority.
          2. Do Rules 24 and 25 Impose Additional License Requirements?
          Pruett also argued, in his motion for summary judgment, that Rules 24 and 25
are ultra vires acts by the Board because they add to the license requirements
established by the Bail Bond Act. In support, Pruett relies on a line of cases and an
Attorney General opinion holding that county bail bond boards lack the authority to
impose different or additional requirements for obtaining a bondsman’s license.
          In Walstad v. Dallas County Bail Bond Bd., 996 S.W.2d 314, 315 (Tex.
App.—Dallas 1999, no pet.), a bail bondsman filed suit, alleging that the bail bond
board exceeded its authority by obtaining an independent appraisal of certain property
that the bondsman had listed in support of her application to renew her license, even
though the bondsman had complied with the Bail Bond Act requirement that she
submit statements from taxing authorities that contained appraisals meeting certain
standards. Id. at 315-16. The board argued that, because it had the authority to
“regulate all phases of the bail bond business,” it could require an independent
appraisal. Id. at 316. The court disagreed, holding that “bail bond boards lack the
authority to impose different or additional requirements for obtaining a bondsman’s
license.” Id. at 317. Because the bondsman had submitted an appraisal that met the
requirements listed in the Bail Bond Act, the board could not require that she obtain
an independent appraisal. Id.
          In Attorney General Opinion No. JC-0366 (August 12, 2001), the Attorney
General was also asked whether a county bail bond board could consider an
independent appraisal on property executed in trust from bondsmen for purposes of
determining their financial limit for executing bonds. The attorney general opined,
“The board may not require the applicant to submit an independent appraisal of his
or her real property, because it has no authority to impose requirements in addition
to statutory requirements on applicants for licensure as bail bond sureties.” Id.; see
also Tex. Fire & Cas. Co. v. Harris County Bail Bond Bd., 684 S.W.2d 177, 178-79
(Tex. App.—Houston [14th Dist.] 1984, writ ref’d n.r.e.) (holding bail bond rule
requiring $100,000 security deposit invalid because it imposed addition burdens on
bail bond license applicants when statutory deposit required $5,000); Bexar County
Bail Bond Bd. v. Deckard, 604 S.W.2d 214, 216-17 (Tex. Civ. App.—San Antonio
1980, no writ) (same).
          We find these cases distinguishable. All of the cases cited above involve
attempts by the boards to alter the licensing requirements specifically set forth in the
Bail Bond Act. Our case, however, does not involve licensing requirements—it
involves the Board’s attempts to regulate how already-licensed bondsmen solicit
business. As such, the present case is more like Dallas County Bail Bond Bd. v. Stein,
771 S.W.2d 577, 579-80 (Tex. App.—Dallas 1989, writ denied). In Stein, the board
passed a rule that prohibited a licensed bondsman from employing an agent who was
a convicted felon. Id. at 578-79. Stein, a convicted felon, filed suit to enjoin the
board from interfering with his employment for a licensed bondsman by enforcing the
rule. Id. at 579. The Stein court distinguished Texas Fire & Casualty and Deckard
by stating:
In each of these cases, the county boards had denied applications for
licenses on the ground that the applicant failed to comply with certain
local rules. Since the Bail Bond Act expressly sets forth the
requirements for a license, these courts correctly reasoned that the local
boards lacked authority to impose different or additional requirements. 
As Stein points out, however, the Bail Bond Act does not expressly set
forth eligibility requirements for employees of licensees. Thus, such
analysis is inapplicable to the present case.

Id. at 580. The Stein court also noted, “Where a statute expressly authorizes an
agency to regulate an industry, it impliedly authorizes the agency to promulgate rules
and regulations necessary to accomplish such purpose.” Id. The court held that the
board’s “broad rule-making power impliedly authorizes the Board to supervise and
regulate employees of bondsmen to the extent that such employees perform
meaningful duties in the bonding business.” Id. (emphasis added).
          In Black v. Dallas County Bail Bond Board, 882 S.W.2d 434, 436 (Tex.
App.—Dallas 1994, no writ), the board adopted a rule requiring bondsmen to pay all
necessary and reasonable expenses incurred by the Sheriff’s Department relating to
the rearrest of a defendant whose bond had been forfeited. Black, a bondsman, filed
suit, alleging that the board had exceeded its rule-making authority because the
Legislature had deleted from the Bail Bond Act a provision that expressly made a
bondsman’s failure to pay rearrest costs a grounds for the suspension of his license. 
Id. at 438. Black argued that the change in the statute preempted the board’s
authority to adopt the rearrest rule. Id. The Black court held that “[t]he broad grant
of authority to supervise and regulate all phases of the bonding business impliedly
authorizes the Board to enact rules on any phase of the business.” Id. at 439.
          We agree with the courts in Black and Stein. The Bail Bond Act gives the
Board the broad power to “supervise and regulate each phase of the bonding
business” and to “adopt and post rules necessary to implement [the Bail Bond Act].” 
Tex. Occ. Code Ann. § 1704.101(3), (4 ) (Vernon 2004). Rules 24 and 25 do not
add to or alter the licensing provisions of the Bail Bond Act. Therefore, we conclude
that the board did not exceed its broad rule-making authority by adopting Rules 24
and 25.
3. Do the Rules 24 and 25 regulate “the execution of a bail bond by a bail
bond surety”?

          Pruett also alleges that the Board acted ultra vires in passing Rules 24 and 25
because, in 1999, the Legislature altered the definition of a “bonding business,”
thereby narrowing the Board’s power to regulate the bonding business. Before 1999,
the Bail Bond Act defined “bonding business” as “the occupation in which a
bondsman is engaged.” Act of May 26,1981, 67th Leg., R.S., ch. 312 § 2, 1981 Tex.
Gen. Laws 875, 876 (since amended) (current version at Tex. Occ. Code Ann. §
1704.001(4) (Vernon 2004)). When the Occupations Code was codified in 1999, the
statute was changed to define a “bonding business” as “the execution of a bail bond
by a bail bond surety.” Act of May 10,1999, 76th Leg., R.S., ch. 388 § 1, 1999 Tex.
Gen. Laws 1431, 2279 (since amended) (current version at Tex. Occ. Code Ann. §
1704.001(4) (Vernon 2004)).


 Therefore, Pruett argues that, when Rules 24 and 25
were passed, the Board had only the power to regulate the actual execution of a bail
bond, not the solicitation of a bail bond.
          We disagree. The Board was authorized, then and today, to “supervise and
regulate each phase of the bonding business in the county.” Tex. Occ. Code Ann.
§ 1704.101(3) (Vernon 2004) (emphasis added). To paraphrase, using the 1999
definition of “bonding business”—the Board was authorized to supervise and regulate
“each phase of the execution of a bail bond by a bail bond surety” in the county. We
hold that the power to regulate each phase of the execution of a bail bond includes
the power to regulate the solicitation of a bail bond, a necessary first step in the
execution of a bail bond.
          4. Do the rules violate the Open Records Act?
          Finally, Pruett argues that the Board acted ultra vires in passing Rules 24 and
25 because the rules violated the Texas Open Records Act. See Tex. Gov’t Code
Ann. § 552.001-552.353 (Vernon 1994 and Supp. 2004). Pruett’s motion cites the
public policy set forth in section 552.001(a) of the Open Records Act, which provides
as follows:
Under the fundamental philosophy of the American constitutional form
of representative government that adheres to the principle that
government is the servant and not the master of the people, it is the
policy of this state that each person is entitled, unless otherwise
expressly provided by law, at all times to complete information about
the affairs of government and the official acts of public officials and
employees. The people, in delegating authority, do not give their public
servants the right to decide what is good for the people to know and
what is not good for them to know. The people insist on remaining
informed so that they may retain control over the instruments they have
created. The provisions of this chapter shall be liberally construed to
implement this policy.

Tex. Gov’t Code Ann. § 552.001(a) (Vernon 1994 and Supp. 2004). In his
appellate brief, Pruett argues, “This Board violates this statute by enforcing the rules
to keep the public from obtaining access, through bondsmen, to public-record jail-inmate and open-warrants information.” (Emphasis added).
          Pruett, however, lacks standing necessary to make such a claim. Rules 24 and
25 do not prohibit Pruett from obtaining access to public information, and Pruett does
not contend that he has been denied access to public information. Instead, Pruett
contends that the general public has been prevented from receiving information that
he wishes to disseminate. Because Pruett has not been denied access to public
information, he has no standing to complain that Rules 24 and 25 violate the Open
Records Act. See Hunt v. Bass, 664 S.W.2d 323, 324 (Tex. 1984) (stating that
standing consists of some interest peculiar to person as individual and not as member
of general public).
          Accordingly, we hold that the Board did not act ultra vires when it enacted
Rules 24 and 25.
C. Are Rules 24 and 25 Unconstitutional?
          In his motion for summary judgment, Pruett contends that, even if Rules 24 and
25 were not ultra vires acts, they are unconstitutional prior restraints on free speech.


 
In two issues, the Board contends that the trial court erred by concluding that Rules
24 and 25 are unconstitutional prior restraints on free speech.


 The Board argues that
Rules 24 and 25 meet the constitutional requirements for commercial speech, as set
forth by the United States Supreme Court in the Central Hudson test. See Cent.
Hudson Gas & Elec. Corp. v. Pub. Serv. Comm’n of New York, 447 U.S. 557, 100 S.
Ct. 2343 (1980). 
          Central Hudson provides a four-part analysis for determining the validity of
restrictions on commercial speech: (1) whether the speech is concerning a lawful
activity and is not misleading; (2) whether the restriction seeks to implement a
substantial governmental interest; (3) whether the restriction directly advances the
governmental interest; and (4) whether the restriction reaches no further than
necessary to accomplish the objective. See id. at 566, 100 S. Ct. at 2351. Under the
Central Hudson test, the Board bears the burden of justifying the challenged
restriction as furthering its substantial interest. See Greater New Orleans
Broadcasting Ass’n, Inc. v. United States, 527 U.S. 173, 183, 119 S. Ct. 1923, 1930
(1999).
                    1. Rule 24—The Open Warrants Rule
          As noted earlier, the open warrants rule prohibits bondsmen from soliciting
bond business from an individual with an outstanding warrant. The rule does not
apply to solicitations if there is an “existing business relationship” between the
bondsman and the individual requiring the bond. We consider whether this rule is
constitutional under the Central Hudson test. 
                              (a) whether the speech is lawful and not misleading
          Rule 24 meets the requirement of the first prong of Central Hudson because
soliciting bail bond sales from people with outstanding warrants is a lawful activity,
and there is no allegation that the information provided by Pruett was misleading.                               (b) whether there is a substantial governmental interest

          The Board asserts that Rule 24 was designed to ensure the safety of police
officers and the public. The Board argues that prohibiting the solicitation of bonds
from people with outstanding warrants will prevent bondmen from “tipping off”
defendants that they are soon to be arrested. Such action, the Board argues, will
reduce the risk of flight by defendants and will diminish the risk of harm to arresting
officers and complainants. Pruett responds that the only interest advanced by the
Board is “killing competition” in the bond industry by restricting the speech of
bondsmen who solicit business in this manner. While it is true that decreased
competition may result from the rules enacted by the Board, such a factor does not
automatically negate the substantial interest advanced by the Board. Therefore, we
hold that the Board has articulated “substantial government interest” in support of
Rule 24, i.e., the safety of arresting officers and complainants in criminal cases. See,
e.g., Morales v. Ellen, 840 S.W.2d 519, 525-26 (Tex. App.—El Paso 1992, writ
denied) (holding that law enforcement exemption to Open Records Act excludes
disclosure of information that, if revealed, “might endanger the life or physical safety
of law enforcement personnel, or interfere with law enforcement and crime
prevention”).
                              (c) whether the restriction advances the government interest
          Under Central Hudson, the Board has the burden of showing that its regulation 
directly and materially advances the aforementioned interests. “Mere speculation or
conjecture” will not satisfy that burden; “rather, a governmental body seeking to
sustain a restriction on commercial speech must demonstrate that the harms it recites
are real and that its restriction will in fact alleviate them to a material degree.” 
Edenfield v. Fane, 507 U.S. 761, 770, 113 S. Ct. 1792, 1800 (1993). A regulation
may not be sustained if it provides only ineffective or remote support for the
government’s purpose. Central Hudson, 447 U.S. at 564, 100 S. Ct. at 2350. 
          Pruett contends that Rule 24 is “too underinclusive and filled with competition-killing exemptions to directly advance the Board’s stated goals.” As to Rule 24, we
disagree. The Board presented the testimony of numerous peace officers, all of whom
agreed that the element of surprise was important in executing an arrest warrant. 
Detective B. Harwell testified that he did not want suspects to know that he was
coming to execute a warrant because “[o]ur safety is involved when the individual is
aware that there is a warrant for their arrest and we are going to come get him.” 
Harwell also testified that “[a]nytime you contact [a defendant] to notify him that I
want to solicit your business as an attorney or as a bondsman, you risk my life.” 
Sergeant B. Carr testified, “Certainly on [Rule] 24, on the officer safety, having done
that for 13 years personally on the street myself, I don’t want anybody to know I am
coming. It’s that element of surprise, not only for my safety, but the defendant, as
well as anybody that’s around the defendant.” Officer S. Ballard, an officer in the
child-abuse unit of the police department, testified that if child-abuse defendants
know that an arrest is imminent, it “poses a risk to the child if the child is still in the
home with the offender, or if he knows where CPS has placed them, or if the child is
with a relative placement, he would also have access to the child.” In sum, all of the
peace officers’ testimony presented at the hearing supported the position that Rule 24
was helpful in maintaining the element of surprise when making an arrest on an open
warrant and in protecting both the officers and victims against the risk of physical
injury by the person subject to arrest. 
          However, many of the officers testified that Rule 24 did not go far enough,
because it exempts from compliance bondsmen having “existing business
relationships” with those individuals requiring a bond. Pruett argues that the
“existing business relationship” exemption is so broad that, in effect, the exception
swallows the rule, thereby providing only ineffective or remote support for the
Board’s stated purpose. To properly address this contention we first define “existing
business relationship.” 
          At oral argument, the Board argued that “existing business relationship” means
that the bondsman involved has in place an existing, current bond on the person
requiring another bond. We agree. The existence of a current relationship based on
an existing bond is the reasonable interpretation to be given to the phrase, especially
when contrasted with the phase “prior or existing business relationship” used in Rule
25.


 Furthermore, this definition is in accord with the newly-enacted section
1704.109 of the Texas Occupations Code, which allows bondsmen with “an existing
bail bond on [an] individual” to solicit bonding business from that individual even
though there is an outstanding arrest warrant that has not been executed. See Tex.
Occ. Code Ann. § 1704.109 (Vernon 2004).
          Having decided that the term “existing business relationship,” as that term is
used in Rule 24, refers to the relationship between a bondsman and an individual for
whom the bondsman has provided a current, existing bond, we next decide whether
the exclusion of such bondsmen from the solicitation prohibition of Rule 24 makes
the rule ineffective.
          Pruett argues that bondsmen are more likely to have “an existing-business-relationship” with a repeat offender, and that repeat offenders are more likely to
endanger law enforcement officers upon learning of a pending warrant than first-time
offenders. In other words, Pruett argues that allowing the solicitation of those already
out on a bond actually increases the risk of injury to officers. 
          Although a rule with no exceptions might provide even more safety to police
officers, we do not believe that the exception in Rule 24 “swallows the rule.” There
are legitimate and valid reasons to exclude bondsmen with existing bonds on
defendants from the rule prohibiting the solicitation of bonds from individuals with
unexecuted warrants. For example, a bondsman with an existing bond on a defendant
would likely have reason to call the defendant upon learning of the existence of an
unexecuted warrant, as the commission of a new offense could likely effect the
existing bond. It is impractical to allow the bondsman to discuss an existing bond,
but to prohibit him from discussing the possibility of acting as a bondsman on the
new offense. Furthermore, a bondsman with an existing bond on a defendant has no
incentive to call a defendant whom he believed would flee or resist arrest, because
such action by the defendant could cause a forfeiture of the original bond.
          Therefore, we conclude that Rule 24 directly advances the Board’s interests in
preventing defendants from fleeing and in protecting those involved in the arrest
process, despite the existence of an exception to the rule for bondsmen with “existing
business relationships” with defendants. Accordingly, we conclude that prong three
of the Central Hudson test has been met.
                    (d) whether the restriction reaches no further than necessary
          Pruett contends that the Board has not satisfied the fourth element of Central
Hudson because, according to Pruett, there are other, less restrictive, means by which
the Board could address its concerns about offender flight and officer safety. 
However, the Board “is not required to employ the least restrictive means
conceivable, but must demonstrate narrow tailoring of the challenged regulation to
the asserted interest—‘a fit that is not necessarily perfect, but reasonable.’” Greater
New Orleans Broadcasting, 527 U.S. at 188, 119 S. Ct. at 1932 (quoting Bd. of
Trustees of State Univ. of N.Y. v. Fox, 492 U.S. 469, 480, 109 S. Ct. 3028, 3035
(1989)). Under the fourth prong of the Central Hudson test, the Board is required to
show that the regulation reaches no further than necessary to accomplish its objective.
Metromedia, Inc. v. City of San Diego, 453 U.S. 490, 507,101 S. Ct. 2882, 2892
(1981).
          Pruett argues that Rule 24 “is clearly overbroad with respect to Appellees’ calls
to the tens of thousands of citizens with open warrants who receive letters from the
Sheriff suggesting that they post bond.” Essentially, Pruett is arguing that the Rule
24 does not alleviate the problem of offender flight and officer safety because it
regulates only solicitation by bondsmen and does not address other groups of people
that might “tip off” defendants, such as the Sheriff’s Department and attorneys.
          This Court addressed a similar argument in Eller Media v. City of Houston, 101
S.W. 3d 668 (Tex. App.—Houston [1st Dist.] 2003, pet. denied). In Eller Media, a
billboard company argued that a Houston city ordinance prohibiting the construction
of new, off-premises billboards failed prong four of the Central Hudson test because
the removal of off-premises signs would not make a “significant improvement” in the
appearance of Houston given that the ordinance did not address the issue of on-premises signs. Id. at 677. This Court noted that the government can make different
regulations for off- and on-premises signs because there are different considerations
behind their functions. Id. Citing Metromedia v. City of San Diego, we concluded
that the City had satisfied the fourth prong of Central Hudson. Id. at 678. In
Metromedia, the United States Supreme Court also addressed a billboard ordinance
that contained exceptions for some on-site advertising. In holding that the ordinance
met the fourth prong of the Central Hudson test, the Court stated:
If the city has a sufficient basis for believing that billboards are traffic
hazards and are unattractive, then obviously the most direct and perhaps
the only effective approach to solving the problems they create is to
prohibit them. The city has gone no further than necessary in seeking
to meet its ends. Indeed, it has stopped short of fully accomplishing its
ends: It has not prohibited all billboards, but allows onsite advertising
and some other specifically exempted signs.

453 U.S. at 508, 101 S. Ct. At 2893.
          In this case, the Board has a sufficient basis for believing that bondsmen who
solicit business from individuals with unexecuted warrants contribute to offender
flight and put police officers and victims at risk. Even though Rule 24 may not fully
accomplish its goal of preventing offender flight and increasing officer/victim safety
in connection with arrests because it regulates only solicitation by bondsmen, we
conclude that, like the billboard ordinances in Eller Media and Metromedia, it goes
no further than necessary in seeking to accomplish its goal. Rule 24 does not prohibit
commercial speech, it merely postpones it until after an arrest warrant has been
executed. See Anderson Courier Servs., 104 S.W.3d at 125-26 (holding prohibition
on use of accident reports for personal gain failed Central Hudson test because not
limited in time).
          We conclude that Rule 24 is not an unconstitutional restriction on commercial
speech. Accordingly, we sustain the Board’s issue relating to the constitutionality of
Rule 24.
                    2. Rule 25—The 24-Hour Rule
          As noted earlier, the 24-hour rule contains two components. First, the rule
prohibits all solicitation within 24 hours after the execution of an arrest warrant. 
Second, after 24 hours have expired, the rule prohibits all calls made during non-business hours. Both components of Rule 25 contain an exception for bondsmen who
have “prior or existing business relationships” with the person requiring a bond. 
                              (a) Solicitation prohibited during non-business hours
          Rule 25 provides that, once 24 hours have elapsed from the execution of an
arrest warrant, no bondsman may solicit bond business after 9 p.m. or before 9 a.m.,
Monday through Saturday, or before 12 noon on Sunday. The Board argues that this
component of Rule 25 does not attempt to regulate constitutionally protected
commercial speech. We agree.
          The first prong of Central Hudson requires that the speech at issue concern a
“lawful activity” and not be misleading. 447 U.S. at 566, 100 S. Ct. at 2351. The
government may freely regulate commercial speech that concerns unlawful activity
or is misleading. Florida Bar v. Went For It, Inc., 515 U.S. 618, 623-34, 115 S. Ct.
2371-2376 (1995).
          Texas law already prohibits telephonic solicitation before noon or after 9.p.m.
on Sunday, and between the hours of 9 p.m. and 9 a.m., Monday through Saturday. 
See Tex. Bus. & Com. Code Ann. § 37.02(a)(2) (Vernon 2002 and Supp. 2004). As
such, the Board may “freely regulate” solicitation by bondsmen during these hours. 
          Accordingly, we sustain the Board’s issue relating to the portion of Rule 25
that prohibits solicitation during non-business hours.
(b) Solicitation prohibited during first 24 hours post-arrest
          Rule 25 also provides that bondsmen may not solicit bond sales at any time
during the first 24 hours after an arrest. The rule provides an exception for bondmen
with “prior or existing business relationships” with the individual requiring a bond.
We consider whether this rule is constitutional under the Central Hudson test.
                                         (i) whether the speech is lawful and not misleading
          Rule 25 meets the requirement of the first prong of Central Hudson because
soliciting bail bond sales from people within 24 hours of their arrest is lawful, and
there is no allegation that the information provided by Pruett was misleading.
                                         (ii) whether there is a substantial governmental interest
          The Board presented evidence that Rule 25 is designed to prohibit “undue
harassment and solicitation of the general citizenry beyond normal business hours
that other telephone solicitors could use.” The blanket prohibition during the first 24
hours after arrest is necessary, according to the Board, because “[i]t is during the
initial 24 hours after arrest that the greatest solicitation abuse occurs.” The Board
presented evidence of citizen complaints about repetitive telephone calls (“20 to 40
calls”) during the first 24 hours after arrest. The Board was also concerned about the 
“professional image of bondsmen.”
          The Supreme Court has held that “[t]he State’s interest in protecting the well-being, tranquility, and privacy of the home is certainly of the highest order in a free
and civilized society.” Carey v. Brown, 447 U.S. 455, 471, 100 S. Ct. 2286, 2295-96
(1980). Furthermore, “[s]tates have a compelling interest in the practice of
professions within their boundaries, and . . . as part of their power to protect the
public, health, safety, and other valid interests[,] they have broad power to establish
standards for licensing practitioners and regulating the practice of professions.” 
Goldfarb. v. Virginia State Bar, 421 U.S. 773, 792, 95 S. Ct. 2004, 2016 (1975).
          Thus, we conclude that the Board has shown a substantial government interest
in enacting the solicitation ban during the first 24 hours after arrest.
(iii) whether the restriction advances the government
interest and reaches no further than necessary
          We next consider whether the ban on bond solicitation during the first 24 hours
post-arrest meets the third and fourth prongs of the Central Hudson test. The third
prong of the Central Hudson tests asks whether the speech restriction directly and
materially advances the government interest. Greater New Orleans Broadcasting,
527 U.S. at 188, 119 S. Ct. at 1932. “This burden is not satisfied by mere speculation
or conjecture; rather, a governmental body seeking to sustain a restriction on
commercial speech must demonstrate that the harms it recites are real and that its
restriction will in fact alleviate them to a material degree.” Edenfield v. Fane, 507
U.S. at 770-71, 113 S. Ct. at 1800. Consequently, “the regulation may not be
sustained if it provides only ineffective or remote support for the government’s
purpose.” Central Hudson, 447 U.S. at 564, 100 S. Ct. at 2343. The fourth prong of
the Central Hudson test “compliments the direct advancement inquiry of the third,
asking whether the speech restriction is not more extensive than necessary to serve
the interests that support it.” Greater New Orleans Broadcasting, 527 U.S. at 188,
119 S. Ct. at 1932.
          Pruett again argues that Rule 25 fails to meet prongs three and four because its
exception “swallows the rule,” thus making it ineffective to support the Board’s
purpose. As to this part of Rule 25, we agree. We begin by noting that the exception
in Rule 25 is much broader than that in Rule 24. While the exception in Rule 24
applies only to a bondsman with an existing bond on an individual requiring a bond,
the exception in Rule 25 applies to a bondsman with a “prior or existing business
relationship” with an individual requiring a bond. (Emphasis added). As such, Rule
25, as written, allows a bondsman with a current bond on an individual, or one who
has ever had a business relationship with the individual in the past, to contact that
person during the initial 24 hours after arrest to solicit new bond business from him. 
Pruett argues that the Board has shown no valid reason for a rule that squelches
competition by prohibiting newcomers to the bail business from competing for that
business during the initial 24 hours after arrest.
          We agree. In Greater New Orleans Broadcasting, the Supreme Court
considered the constitutionality of a statute that allowed Indian-owned casinos to
participate in broadcast advertising, but prohibited non-Indian casinos from doing the
same. 527 U.S. at 190, 119 S. Ct. at 1933. The Court noted that the purpose the
government sought to advance—reducing the societal costs of casino gambling—was 
not advanced by distinguishing between the types of casino owners who could
advertise by broadcast. Id. at 193, 119 S. Ct. at 1935. “[T]he Government presents
no convincing reason for pegging its speech ban to the identity of the owners or
operators of the advertised casinos.” Id. at 191, 119 S. Ct. at 1934. The Court noted
that, while there may be valid reasons for regulating non-Indian businesses differently
from tribal businesses, those differences did not “justify abridging non-Indians’
freedom of speech more severely than the freedom of their tribal competitors.” Id.
at 193, 119 S. Ct. at 1934. The Court noted that “decisions that select among
speakers conveying virtually identical messages are in serious tension with the
principles undergirding the First Amendment.” Id. at 194, 115 S. Ct. at 1935.
          In this case, the Board presented no valid reason to justify a rule that
differentiates within the same class of speakers, i.e., bondsmen. The rule, effectively, 
grants a bondsman with “prior or existing business relationships” an exclusive right
to solicit repeat business from its prior customer during the first 24 hours after arrest.
The rule also allows a bondsman with prior or existing business relationships with a
person requiring a bond an unfettered right to call that person as many times as he
wants during the initial 24 hours after arrest, while denying bondsmen without prior
or existing business relationships the right to attempt to solicit business at all during
the same time period. The exception in Rule 25, as opposed to that in Rule 24, is too
broad to sufficiently advance the Board’s stated purpose. 
          Accordingly, we conclude that the portion of Rule 25 that prohibits bondsmen
who have no “prior or existing business relationships” with individuals requiring a
bond from soliciting bond sales during the initial 24 hours after arrest is an
unconstitutional prior restraint on free speech. As such, we overrule the Board’s
issue relating to the 24-hour prohibition on solicitation of bond business after arrest.
CONCLUSION
          We affirm the portion of the judgment of the trial court that enjoins the Board
from enforcing the prohibition against the solicitation of bail bond business during
the initial 24-hour period after arrest, found in Rule 25. We reverse the portion of the
judgment of the trial court that enjoins the Board from (1) enforcing Rule 24's
prohibition against the solicitation of bail bond business from those with unexecuted
warrants, (2) enforcing Rule 25's prohibition against the solicitation of bail bond
business during non-business hours, and (3) giving effect to the order suspending
Pruett’s bail bond license. We remand for further proceedings. We express no
opinion as to whether Pruett’s license should be suspended after consideration of this
opinion.
          We overrule all pending motions.
 
 
                                                                        Sherry Radack                                                                                                   Chief Justice

Panel consists of Chief Justice Radack and Justices Alcala and Bland.